Otis Corbett, Respondent, *v.* The Spring Garden Insur-
ance Company, Appellant.

1. Fire Insurance — Leasehold — Liability Dependent upon
Total Destruction.   A policy of fire insurance upon a leasehold inter-
est in a building contained a condition that the company should be liable
"in case of such destruction by fire of the above-named premises that
the lease held by the assured shall be by its terms and in fact canceled."
The lease provided that in case of partial damage by fire the building
should be repaired as speedily as possible at the expense of the landlord;
that in case of such extensive damage as to render the building untenant-
able, the rent should cease until the building should be repaired, and that
in case of the total destruction of the premises the lease should then
cease and come to an end.   *Held*, that there could be no recovery on
the policy unless the building was in fact totally destroyed within the
meaning of the policy.

2. Not a Total Destruction of Building.   In an action upon such
policy it appeared that the building was so damaged by fire as to be ren-
dered untenantable, but that, while the roof and interior were destroyed,
the foundations and walls remained substantially intact, and that the land-
lord had restored the building to substantially its former condition at an
expense of about one-third of its original value.   *Held*, that the evidence
did not warrant the submission to the jury of the question of total
destruction as one of fact, but the trial court should have held as matter
of law that there was not a total destruction of the building within the
intent and meaning of the policy.

*Corbett* v. *Spring Garden Ins. Co.*, 85 Hun, 250, reversed.

(Argued March 3, 1898;  decided April 19, 1898.)

Appeal from a judgment of the late General Term of the
Supreme Court in the first judicial department, entered March
25, 1895, affirming a judgment in favor of plaintiff entered
upon a verdict, and an order denying a motion for a new trial.

This was an action upon a policy of fire insurance.

The facts, so far as material, are stated in the opinion.

*Michael H. Cardozo* for appellant.   The contract of insur-
ance was enforceable only in the event of the "total destruc-
tion" of the premises, and there was no total destruction
within the meaning of the policy.   (*Cadwell* v. *Arnheim*, 152
N. Y. 182 ; *Hudson* v. *R., W. & O. R. R. Co.*, 145 N. Y.

408; *Lane* v. *Town of Hancock*, 142 N. Y. 510; *Hemmens* v. *Nelson*, 138 N. Y. 517; *Linkauf* v. *Lombard*, 137 N. Y. 417; 13 C. B. 916; *Claflin* v. *Meyer*, 75 N. Y. 260.) There is no authority which required the trial court to submit the question of total destruction as one of fact, under the circumstances of this case, to the jury. (Wood on Fire Ins. § 107; 2 May on Ins. 967, § 421, *a*; Ostrander on Fire Ins. [2d ed.] 670, § 310; Biddle on Ins. § 1375; Joyce on Ins. §§ 3025–3030; Beach on Ins. § 890; *Judah* v. *Randall*, 2 Caines Cas. 325; *Williams* v. *H. F. Ins. Co.*, 54 Cal. 442; *Seyk* v. *M. N. Ins. Co.*, 74 Wis. 67; *Harriman* v. *Q. Ins. Co.*, 49 Wis. 71; *H. B. Ins. Co.* v. *Garlington*, 66 Tex. 103; *O. P. & P. Co.* v. *M. Ins. Co.*, 31 Fed. Rep. 200; *Vanderpoel* v. *Smith*, 2 Daly, 135; *Hoeveler* v. *Flemming*, 91 Penn. St. 322; *Wallerstein* v. *C. Ins. Co.*, 44 N. Y. 205; *Ins. Co.* v. *Fogarty*, 19 Wall. 640; *Burt* v. *B. & M. Ins. Co.*, 9 Hun, 383; 78 N. Y. 400; *Carr* v. *P. W. Ins. Co.*, 38 Hun, 86; 109 N. Y. 504.)

*Francis Dwight Dowley* for respondent. The building ceased to exist as a building by reason of the fire. (*McGary* v. *People*, 45 N. Y. 156; *Truesdell* v. *Gay*, 13 Gray, 312; *Huck* v. *G. Ins. Co.*, 127 Mass. 306; *Judah* v. *Randall*, 2 Caines Cas. 324.) When the building ceased to exist as a building by reason of the fire, there was a total destruction within the intent of the lease and the policy. (May on Ins. § 421; Wood on Fire Ins. § 107; Biddle on Ins. § 1375; Joyce on Ins. § 3025; *O. P. Co.* v. *M. Ins. Co.*, 31 Fed. Rep. 204; *H. & B. Ins. Co.* v. *Garlington*, 66 Tex. 103; *Williams* v. *H. Ins. Co.*, 54 Cal. 442; *Nave* v. *H. Ins. Co.*, 37 Mo. 430; *N. Y. R. E. Co.* v. *Motley*, 16 N. Y. Supp. 209.) The motions made to dismiss the complaint and to direct a verdict for the defendant were properly denied. (*Huck* v. *G. Ins. Co.*, 127 Mass. 306; *Thompson* v. *Lumley*, 50 How. Pr. 105; 64 N. Y. 631; *Elwood* v. *W. U. T. Co.*, 45 N. Y. 549; *Clemence* v. *City of Auburn*, 66 N. Y. 334; *Pratt* v. *D. H. M. F. Ins. Co.*, 130 N. Y. 206.) The verdict is not against the weight of evidence. (*Bedell* v. *L. I. R. R. Co.*, 44 N.

Y. 367; *Clark* v. *Baird*, 9 N. Y. 184; *Judson* v. *Easton*, 58 N. Y. 664; *Elwood* v. *W. U. T. Co.*, 45 N. Y. 549; *Sackett* v. *Breen*, 3 N. Y. Supp. 473; Biddle on Ins. § 1375; *C. A. Co.* v. *Meyer*, 29 S. W. Rep. 93.)

O'BRIEN, J. The defendant insured the plaintiff's lease-hold interest in a building in the city of New York in the sum of $2,500 for three years against total destruction of the building by fire. The premium charged was $18.75. The plaintiff's right to recover depended upon the fact alleged that the building was totally destroyed within the meaning of the policy. The following is the condition of the policy which described and limited the defendant's liability in case of fire :

"It is a condition of this insurance that in case of such destruction by fire of the above-named premises that the lease held by the assured shall be by its terms and in fact canceled, this company shall be liable to pay an amount not exceeding the sum hereby insured."

This condition limits the plaintiff's right of action to a case where the lease becomes canceled by its own terms in consequence of the destruction of the building by fire. In order to see when and under what circumstances the plaintiff's estate terminated, we must have recourse to the lease of the premises between himself and his landlord. It contains the following stipulation :

"And it is further agreed between the parties to these presents, that in case the building or buildings erected on these premises hereby leased shall be *partially* damaged by fire, the same shall be repaired as speedily as possible at the expense of the party of the first part; that in case the damages shall be so extensive as to render the building *untenantable*, the rent shall cease until such time as the building shall be put in complete repair, but in case of the *total* destruction of the premises by fire or otherwise, the rent shall be paid up to the time of such destruction, and then and from thenceforth this lease shall cease and come to an end ; provided, however, that such damage and destruction be not caused by the care-

lessness, negligence or improper conduct of the parties of the second part, their agents or servants."

The lease contemplates and provides for three contingencies which might occur during the term: (1) Partial damage by fire; (2) such extensive damage as to render the building untenantable, and (3) the total destruction of the premises by fire. In the latter case only does the estate of the tenant, which was the subject of the insurance, come to an end.

Hence, the learned counsel for the plaintiff is obliged to concede that there can be no recovery on the policy in this case, unless the building was in fact totally destroyed within the meaning of the policy. The learned trial judge submitted that question to the jury as one of fact, and a verdict was found for the plaintiff.

The only question in the case necessary for us to consider is whether this finding is sustained by any evidence, or, rather, whether there was any evidence given which warranted the submission of the question to the jury as one of fact.

The building was six stories high in front and five in the rear, with an iron front, the side and rear walls being of brick. It was about seventy-two feet wide and ninety feet deep. It was practically an entirely open building inside, used for warerooms and upholstery and furnishing department.

The lease was dated February 8, 1888, and ran to the plaintiff for ten years, the annual rental being fixed at $8,867.30. The fire occurred on the 23d of November, 1892. The plaintiff had a stock of furniture in the building at the time, which was insured for $73,500. There is no substantial dispute in the evidence with respect to the condition in which the building was left by the fire. The roof was burned off and the interior destroyed; woodwork, sashes and glass were gone; the iron front was considerably damaged, but the foundation and the four walls remained substantially intact. It was shown that the sound value of the building before the fire was about $90,000; that the expense of repairing the building, putting it in at least as good condition as it was before the fire, was about $32,000, and the estimate of mechanics who

offered to repair the building was considerably less than the latter sum. The inside of the building was to be rebuilt. There were some holes in the rear wall, and the brick in some places was somewhat damaged. In order to make the repairs, a few courses of brick had to be taken from the top of the rear wall, probably about fifteen or sixteen inches. A new cornice was put on, and some of the arches over the windows had to be repaired.

Without going into minute details, it may be stated that the owner put this building in substantially as good condition as it was before the fire for the sum of $31,905. This included plumbing, gasfitting, heating, two elevators, ironwork for the front, plastering, repairing the brickwork, removing rubbish, and taking down such parts of the walls as had been injured. A building worth about $90,000 before the fire was thus restored for something more than one-third of that amount.

The question is whether, upon this state of facts, the jury could have made a finding that the building was totally destroyed. We think that, under the circumstances, the case should not have been submitted to the jury, but that the court should have held, as matter of law, that there was not a total destruction of the building by fire within the true intent and meaning of the policy. A total destruction, within the meaning of the policy, must mean the complete destruction of the insured property by fire, so that nothing of value remains of it, as distinguished from a partial loss, where the property is damaged but not entirely destroyed. This does not mean that the materials of which the building was composed were all utterly destroyed or obliterated, but that the building, though some part of it may be left standing, has lost its character as a building, and, instead thereof, has become a broken mass, or so far in that condition that it cannot properly any longer be designated as a building. When that has occurred, then there is a total destruction or loss. A total loss does not mean an absolute extinction. It is not necessary that all the parts and material composing the building are absolutely and physically destroyed, but the inquiry always is whether, after the fire, the

thing insured still exists as a building. (Wood on Fire Insurance, § 107; May on Insurance, vol. 2, p. 967, § 421a; Ostrander on Fire Insurance [2d ed.], p. 670, § 610; Biddle on Insurance, § 1375; Joyce on Insurance, §§ 3025, 3030; Beach on Insurance, § 890; Black's Law Dictionary, "Total Loss;" *Judah* v. *Randal,* 2 Caines Cases, 325; *Williams* v. *Hartford Ins. Co.,* 54 Cal. 442; *Seyk* v. *Millers' National Ins. Co.,* 74 Wis. 67; *Harriman* v. *Queen Ins. Co.,* 49 Wis. 71; *Hamburg-Bremen F. Ins. Co.* v. *Garlington,* 66 Texas, 103; *Oshkosh Packing & Provision Co.* v. *Mercantile Ins. Co.,* 31 Fed. Rep. 200, 204.)

In this case it is undoubtedly true that the building was damaged to such an extent as to render it untenantable, but to say that it was totally destroyed when the owner restored it for about one-third of its original value, would be to entirely disregard controlling facts. Some just or reasonable principle must be applied to the facts in this case in order to determine whether there was, as the plaintiff claims, a total destruction of the building, and it is not unreasonable to apply the doctrine which prevails in marine insurance with respect to the total loss of the ship or vessel insured. There it is held that the ship is a total loss when she has sustained such extensive damage that it would not be reasonably practicable to repair her. The ordinary measure of prudence which the courts have adopted is this: If the ship when repaired will not be worth the sum which it would be necessary to expend upon her, the repairs are, practically speaking, impossible, and it is a case of total loss. This is said to be the English rule. (*Moss* v. *Smith,* 9 C. B. [Man. & Scott] 103; *Manning* v. *Irving,* 1 id. 176; *Rosetto* v. *Gurney,* 11 C. B. [2 J. Scott] 186, 187; *Grainger* v. *Martin,* 2 Best & Smith, 467, 468; *Adams* v. *Mackenzie,* 13 C. B. [N. S.] 442.) The American rule recognizes the same principle, but fixes upon a different amount of expense as giving the right to abandon. If the expense of repair will exceed half the value of the ship when repaired, she is considered a total loss, and may be abandoned. (*Insurance Co.* v. *Fogarty,* 19 Wall. 640; *Wallerstein* v. *Columbian*

*Ins. Co.*, 44 N. Y. 205.) A total loss or a total destruction takes place when the subject insured wholly perishes, or its recovery is rendered irretrievably hopeless. (*Burt* v. *Brewers & Malsters' Ins. Co.*, 9 Hun, 383; affirmed, 78 N. Y. 400.) A constructive total loss, which enables the owner to abandon the ship, takes place when the subject insured is not wholly destroyed, but its destruction is rendered highly probable and its recovery, though not hopeless, yet exceedingly doubtful. (Burrill's Law Dict., "Total Loss;" Arnold on Insurance, 990; 3 Kent's Comm. 318, 320, 321.)

The jury could not be permitted to find, in a case like this, that the building had been totally destroyed because the interior and the roof were gone. Those parts of the building could be readily supplied. Nor is the verdict for the plaintiff warranted by the fact that the ironwork, cornice and some of the brick walls had been damaged. The important and fundamental fact still remained to confront the jury at every stage of its investigation, that the foundation and four walls of the building were still substantially intact, and that it was possible, by the expenditure of less than $32,000, to make it as good a building as it was before the fire had occurred. So we think that the facts in this case required the learned trial judge to direct a verdict in favor of the defendant, and the exception to his refusal of the defendant's request to that effect was well taken.

The judgment should, therefore, be reversed and a new trial granted, costs to abide the event.

All concur (GRAY, J., in result), except PARKER, Ch. J., not sitting, and HAIGHT and MARTIN, JJ., dissenting.

Judgment reversed, etc.